Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good morning. We have one case on our oral argument docket this morning. It is 19-60632, Harness v. Watson. Mr. Verrilli. Good morning and may it please the court. I'm Don Verrilli for Appellants Harness and Kareem. When the participants in Mississippi's 1890 Constitutional Convention specified nine particular crimes in section 241. They did so for the express purpose of disfranchising African-Americans. Section 241 was an integral part of their brutally successful effort to prevent African-Americans from voting. Because the disfranchising crimes specified in the 1890 Constitution were enacted with discriminatory intent, the disfranchisement was unconstitutional and therefore invalid from the moment it was adopted. It was void ab initio. And those 1890 provisions remain invalid and unenforceable today. Mississippi has never enacted a valid race-neutral replacement for them. Not in 1950, not in 1968, not in the 1980s, never. In the words of the Supreme Court in Abbott, Mississippi has never altered the intent with which the original article, including the parts that remain, had been adopted. Indeed, it's difficult to conceive of a race-neutral justification for the bizarre collection of crimes specified in the 1890s. Mr. Verrilli, this is Judge Duncan. Good morning. I hear the argument you're making, but one of the plaintiffs in this case was disenfranchised for having committed forgery, correct? Yes. And forgery goes back to the 1817 Mississippi Constitution. In fact, it was in the 1868 Mississippi Constitution under which Congress reapproved Mississippi's admission to the legislature, to the to the Union. So how can you say that the inclusion of forgery is motivated, is an example of discriminatory intent when it's been in the Constitution since 1817? A couple of responses to that. A very similar argument was made in Hunter versus Underwood with respect to the alterpitude. Had no traction there, shouldn't have any traction here. And the response. So here's the answer, I think, Your Honor. The Arlington Heights framework applies. There's no doubt that the collection of crimes identified in the 1890 Constitution were motivated by racial discrimination. How could forgery be motivated by racial discrimination if it was in there since 1817? It's not just one crime, Your Honor. It's the collection of crime. What was included, what was omitted and what was the motivation for the inclusion and the omission? And the Mississippi Supreme Court told us in 1896 that the reasons for the inclusion and the omissions was to disfranchise African Americans disproportionately. So there's no doubt that race discrimination was a motivating consideration in 1890 for forgery and every other disfranchising crime. Therefore, under Arlington Heights, the burden shifts to the state to demonstrate that the 1890 Convention would have adopted the same provision for solely race neutral reasons. In the district court, they conceded that he couldn't do that. They've made a half hearted effort in their brief in this court to say that they can, but that simply fails. The provision is void ab initio because it was motivated by invidious discrimination. Because it was void ab initio in 1890, I think this is the critical point. The point where the parties diverge in their in their approach to the analysis. But I do think it's important to try to clarify exactly how the equal protection analysis works. There's two steps to it was clear in Hunter that there are two steps to it. First step is a step I just described. The court evaluates whether the 1890 provisions in Section 2 41 were motivated by discriminatory intent and are invalid under Arlington Heights. So, Mr Burrell, let me just follow up. You seem to be agreeing that it's the set of crimes that was selected in 1890 that carry the discriminatory taint. It's excluding some and including only those. Is that right? Well, it's the intent behind the exclusions and the of that set of that set. Yes, right. Okay. So my question then is a new set. A changed set was adopted in 1950. And yet another change set was adopted in 1968 through valid constitutional amendments that the Legislature proposed in the people approved. So why don't we have different sets now? And so, therefore, a different consideration of intent in a different era? I think for the reason I was just trying to get at Judge Duncan. And the reason is this just as a matter of basic jurisprudence, fundamental principle of constitutional law, that because the 1890 provisions were enacted with discriminatory invidious intent, they were invalid void ab initio. And I think it's useful. I'm gonna quote if I could. This is from a case from this circuit. It was not in our briefs. I apologize, but I think it goes right to this issue, and I think it's vital. It's the Medical Center Pharmacy case. It's 5 36 F third, and I'm quoting from page 401 of Judge Smith's opinion. It's about an act of Congress and his constitutionality. In short, Congress's act of amendment gains lawful expression only through enactment of a valid statute. The act of amendment is invalid because it's unconstitutional. And I was paraphrasing there, picking back up the quote. The act is void ab initio, and it is. It is as though Congress had not acted at all. That same rationale applies 100% to the 1890 Constitution. It because it was unconstitutional. It is as though the convention did not act at all. Mr Verrilli, this is Judge Higginson. I have two questions applying Hunter and Abbott. Does the outcome in turn in large part on the parliamentarian distinction between a reenactment and an amendment? That's my first question. And then looking at circuit law, could you speak to the 11 circuits on bond decision? I'm sure you know. Well, I'm thinking particularly about footnote 21 in the accompanying text. It seems to state strongly that the burden cannot be on the state. So my question is to that case is, would we have to agree with Judge Barquette's dissent? And the last part of the question is, she did seem to think that cotton was distinct from her to step. Did you? Do you understand my questions? I do, and I'll try to take them, Judge Higginson, in the order that you asked them. Okay, with respect to the first, I don't think it's quite that the that it's the parliamentary distinction between an amendment and an enactment. I think it's this. I think it is because in the as I just said, basic principle of jurisprudence, because the 1890 provisions were unconstitutional, they were invalid from the moment of their enactment. It is for federal constitutional purposes as though they were never on the books. Therefore, in order to disfranchise someone under a constitutionally valid provision covering forgery or embezzlement or any of the other eight, any of the other eight crimes from 1890, Mississippi would have had to enact a new provision making those crimes disfranchising. That did not happen in 1950. It did not happen in 1968. And the reason for that is that the voters were never asked to vote in either instance on whether they wanted to. They wanted to keep or reject the eight crimes from 1890. In 1950, they were asked whether they wanted to subtract burglary from burglary from the list, leaving the other eight crimes in place. In 1968, they were asked whether they wanted to add murder and rape, leaving the other eight crimes in place. Both votes presupposed that the that the original 1890 crimes except for burglary would remain in the Constitution no matter how the vote turned out. And I think it's useful to contrast the effect of the vote in 1968 with respect to rape and original eight 1890 crimes. With respect to rape and murder, it was an enactment because the voters were asked, Do we want rape and murder in or do we want rape or we not want rape and murder in? If the voters voted yes, those provisions are enacted. The voters vote no, they're not enacted. They're not in the Constitution. But with respect to Mr Verrilli, is it the natural follow on to your position that because that original set of crimes was tainted that if the Mississippi voters tomorrow were asked to vote to disenfranchise all felons and misdemeanors that that would necessarily be tainted also? No, not at all. Because I think that would be fundamentally different. And I think that in the best interest of your client. Well, I guess my answer there, Your Honor, is that it's in the interest of my clients to have this their right to vote is restored. It would violate the ex post facto clause to take their right to vote away on the basis of a future enactment. And that's true for my clients and many, many others. It's a fundamentally important point. Since your clients are a group, they are a group of current felons. But this would also act prospectively to disenfranchise many of the racial group who you say were intentionally disenfranchised earlier. But we don't know. The question would be what on what basis did was the Constitution amended? Sir, your argument is that you cannot possibly amend the Constitution and include the originally tainted set of crimes without also being party to that taint. No, we're saying something different, Your Honor. We're saying is that the particular collection what's excluded and included is the basis for the discriminatory taint that a law that that disenfranchises all felons doesn't have that flaw. And so long as there's a race neutral justification for adopting it, it wouldn't violate the principle we're arguing wouldn't come close. And I think that points up a very substantial if I may, if I may, if I may follow on really to try to combine these two lines of questions. To be clear, this what happened in 1950-1968 were amendments. They were not reenactments. Right. In other words, Mississippi could have simply put up for votes, a recodification of the current language, which would not be disenfranchising all felons. That's not what happened here, though. Is that right? That's correct. There was no opportunity to vote on no matter how the vote, no matter whether I think one way you're on to understand it is if I were a citizen of Mississippi and said, I think we need to get rid of those 1890 crimes because they're tainted with discriminatory intent. They have no business being in the Constitution. There was no way for me to effectuate that preference in the vote. I vote yes to the amendment that crimes are in. I vote no to the amendment that crimes are in. I take your point then they could have reenacted the set completely and thereby cleanse the taint. The problem is they didn't reenact. They simply amended. And so now we have this Abbott test about whether that amendment had the effect of altering the intent of the preexisting offenses. I think our point, your honor, goes a step further than that, which is that the amendment without a reenactment, there is no possibility of altering the enact the provision in the first place for well, but I think you accepted Judge Jones's hypothetical that if you would amend if Mississippi had amended to disenfranchise everybody, then of course, that includes disenfranchising for the for the cherry pick list. The problem here is I understand you're saying is that there's no indication that adding murder to rape, the two worst offenses one can imagine, there's just no indication that that would alter the intent of the preexisting list. That's correct. That was your argument. And it's so but I think it combines two points. I'm just trying to make that clear if I can. One is, as your honor just indicated, there is zero historical evidence, zero historical evidence that the reason for the the amendment 1950 or 1968 was to remove the discriminatory intent. But even more fundamentally, because the 1890 provisions were void ab initio, the only way for them to have legal force for them to be reenacted for race neutral reason, absent a reenactment for a race neutral reason, they're just not on the books, they're unconstitutional, and void ab initio. Okay, well, here's where I went part company with you, though, because you keep saying, avoid ab initio, I think I accept your intent theory, at least, I think there's a valid argument there. My concern is the effect. Hunter doesn't say void ab initio. Hunter says, a new enactment could theoretically change things. But the problem here is there was no enactment and the section continues to this day, to have that effect. That's the problem I have you with your case is the lack of current discriminatory effect. Do you want to talk about that at some point? Sure, I'm happy to address that, your honor. I think the discriminatory impact is clear. I think it's more clear even than in Hunter. That let's suppose let's suppose parts apologies for the interruptions. I think my last question on this right. Suppose instead of the current cherry pick list, as you say, it's simply a random selection of one 10th of the current offender population. What would the statistical result of that be? No, I don't know, your honor. But I think that fundamental point that would mirror the it would mirror the offender population, right? If it's random, but all but but the problem with the statistics that my friends in the state are putting before the court and arguing is all they're showing you is that criminal law enforcement in Mississippi generally has a disparate impact, and that the disparate impact is no greater with respect to the disenfranchising offenses and the other offenses, but that's I totally agree. I totally agree with what you're saying. So the problem then if there is racial discrimination, it's not in the disenfranchisement law, it's in the criminal justice system, and you need to bring another suit to talk about that. I disagree with that, your honor, because the the that a that is not how the Supreme Court analyzed it in Hunter. The Supreme Court asked in Hunter, the question of whether the provisions were acting to disproportionately disenfranchised African American. I'm not sure I agree with that reading. In this, the hunter talks about disparate impact as uncontested. And it quotes the Court of Appeals. What do you make of footnote 11 in that very section of the Court of Appeals opinion? So what what we did, your honor, and I, of course, any questions about it, I would urge the court to go do this. If one looks at the joint appendix, uh, to the hunter against Underwood, and it includes the testimony of the state's expert and the testimony of plaintiff's expert. And if one looks at the analysis that both the state's expert and the plaintiff's expert undertook, they undertook the same analysis. They compared the percentage of African Americans disenfranchised to the percentage of African American voters, not to the it wasn't a convict. I mean, the fact that right. But what do you make of footnote 11 of the Court of Appeals opinion? So I'm sorry, your honor, I'm not in a position to answer that. But the with respect, I read footnote 11. I'm sorry to keep driving. I just want to make sure we're being efficient. footnote 11 seems to reserve the very question we're talking about here, which is what if they're what if the disparity is in the offender population and not as a result of the disenfranchising legislation? It seems to me 100 doesn't really speak to this because it's reserved. So, but I think the answer so moving past precedent to logic, and then I want to get to the point of whether disparate impact is required at all. But assuming as your honor, positives, a disparate impact is required. As a matter of logic, the question is not whether some other possible disenfranchisement laws say all and disenfranchisement has more of a disparate impact or less of a disparate impact than this one. The question is whether the disenfranchisement law that the that was adopted in 1890 in the convention has a disparate impact on African American voters, non African American convicts as compared to white convicts on the population of African American voters. That's the proper denominator for the discipline. Okay, so so let me follow up with that. And let's talk about logic. Let's go back to 1890. As I understand from your expert reports and from the 1896 Mississippi Supreme Court decision, the whole theory of this thing was that they thought blacks committed furtive crimes much more much more often than robust crimes. I'm just repeating their language. Um, was the theory. I mean, my first question is, was that true? Seems insane to me. Well, I certainly thought it was true, and I thought it was true enough to put it in the Constitution. Were they right about it? It sounds like a crackpot racist theory. There were lots of those floating around back then. Well, it seems to me whether they're right or wrong about it doesn't and shouldn't bear on their intent. And that certainly should bear on what's the impact of the provision. And let me tell you why I doubt that there's any impact of this. First of all, let me just say for the record that I think the idea that blacks commit furtive crimes and whites commit robust crimes is is insane. But look, let's look at one of the crimes embezzlement. For example, the stats today say that of all the people who commit embezzlement, it's about 50 50 black non black. Whereas let's look at the stats for murder, which are not challenging. The 93% of murders and whites are convicted of 24% of murders. And yet you're not challenging the inclusion of murder and rape, but you are including the inclusion of embezzlement. I just there's a huge disconnect there. Well, that's because disparate impact as a matter of law. First of all, disparate impact doesn't matter. If the provision was enacted with invidious discriminatory intent, it's unconstitutional. Full stop. And I think it's totally contrary to 100. And why is Hunter than talking about 1.7 times? It's answering an argument that the state was making the state. It was in the context of state saying, Look, whatever might have been the case with respect to the motivations for the original enactment, we pruned a lot of the worst stuff away. The stuff that remains can be justified on race neutral grounds. And the court was responding was saying that it was the main thing the court said was, well, without deciding whether if enacted today, if enacted today has to be in that thing would have to be enacted again, that it would whether it would be motivated by decided discriminate. It's enough to say that its original enactment violated equal protection. And in response to what you're saying is continuing to have this effect now. And I think that has to be right. If you think about it, Your Honor, because otherwise, Mr Verrilli in answering why murder is not being challenged, even if it has a disparate impact on the voting population, um, it's clear under Supreme Court precedent. The disparate impact isn't enough for an equal protection violation. That's one of that. Explain why murder wouldn't wouldn't have a case under equal protection. We didn't allege that because we didn't. We didn't see evidence in 1968 that the crimes were committed for reasons of invidious discriminatory reasons in vivid contrast to 1890 when those provisions were added. Don't doesn't your brief talk about the racist currents in 1868 as well as 1890 in the legislation? So if I could just go back, Judge Duncan and complete my answer earlier question, then I'll answer this question. With respect to the earlier question, it can't be right that the constitutionality of a law enacted for an out of constitutionality, depending on whether the prediction of the invidious discriminators was accurate in the world or not. That can't possibly be the right principle of law. If it was enacted for reasons of invidious discrimination, it was invalid. The moment it was enacted, it was void ab initio and full stop. Now, with respect to the points about the environment in 1950 and environment in 1968, I do think that that evidence that we've cited that evidence because it's relevant because I think it's responsive to an argument the state is making. The state is making essentially an argument. Well, even if there is no reenactment, we can presume that the goal of the amendment in 1968 was to reenact the whole package for race neutral reasons. Now, as I said earlier, there's not one iota of historical evidence to support that. No one said that about the council. Let me just interrupt you there. I'm struggling a little bit with Judge Higginson's questions and in your exchanges with Judge Duncan. I'm struggling to figure out what what is your position? What would be a reenactment in this case if 1968 provision wasn't a reenactment? In other words, what do you contend the state of Mississippi would have to do to reenact this provision? They would have to put the voters the choice of whether to accept the inclusion of the eight disfranchising crimes in the Constitution or reject the inclusion because absent basically they would have to repeal the provision. Step one, then they would have to reenact the provision, even if it was the exact same provision. Step two. So I don't know that they'd have to repeal it in that it's it's it's void. Ab initio was unconstitutional the moment. How is what? How is what they did in 1968? Not a reenactment. Then all the all the crimes that were are currently disenfranchising crimes were listed in the amendment that the people voted on in 1968. Correct. That's correct. But the people were not given the opportunity to vote to reject the inclusion of the 8 1890 crime. They voted to include all the crimes. And you said that we should look at the set of crimes that was listed, and that's what they did in 1968. No, that's not correct, Your Honor. They voted to add murder and rape to the existing list of crimes. They voted, but they re approved the entire set of crimes. Correct. Oh, there is no basis for thinking that there is no basic whoever. That's what the amendment says, Mr Verily. But my question is, under what law do you the law of Mississippi? Or are you looking to some U. S. Constitutional law that I'm not familiar with? So I think both, Your Honor. The premise comes from Mississippi. I believe I would stand corrected by my colleagues is saying that, um, what the voters voted on superseded, replaced and, you know, essentially rendered nullity. The 1890 provision. That's what if that's correct about Mississippi law, what's your answer? Can't possibly be correct about Mississippi law. For example, in 1935, Mississippi amended Section 2 41 to extend the franchise to women. Now, my friends on the other side are making the argument that that superseded the 1890 Constitution and eliminated eliminated any discriminatory 19th Amendment had been passed. So that was sort of window dressing. Well, but but the same logic applies. And that's it isn't. It isn't a reenactment. It doesn't supersede under the Mississippi Constitution because these provisions were void ab initio. The only way for the state to restore them to constitutional status would be to have a new enactment of them for race neutral reasons. Now again, it's very hard to understand what the race neutral reasons would be for this collection of crimes. Okay, what's your federal law basis for this idea? The void ab initio? No, sir. The idea that you had to that the voters had to engage in some kind of two step in order to purge the taint. What's your best case? It's a it's a proposition of logic, Your Honor, that if the voters don't have the opportunity to vote to reject the provisions and they didn't have the opportunity to vote to enact them, their vote has no bearing on whether those provisions stay in the Constitution. That can't possibly be an enactment. So I guess you don't, I guess you don't believe that the logic of the law is experience. Well, I believe the logic of the law is logic. And this, you know, and I think, you know, perhaps this sounds formalistic, but formalism is the essence of the rule of law. I think what my friends on the other side ultimately are. Let me follow up on that if I may, because frankly you may have talked me out of your intent arguments. I started with you on intent that I think you've lost me. Let's accept your void ab initio theory. Let's just take it as given. That means the law is essentially doesn't exist. Tell me what happened in 1950 and 1968. Let's say there was no unconstitutional provision because as you say it's void ab initio and the voter and the legislature and the voters vote in 1950 and 1968. I don't have the text of those actual enactments in front of me, but do I understand correctly? Those provisions weren't just adding words. They were putting the entire list back into the constitution. No, that's not right because it's a formalistic matter. If there was nothing in the, I apologize for not remembering the 1890, if there was no 1890 Mississippi constitution and all they're doing is the 1950 and 1968 amendments. And in 1960, you have nothing to stew over? No, in 1968, it's not that we have nothing to stew over. They continue to enforce an unconstitutional provision and we're suing to block the enforcement. It's void ab initio, you said. Right. So all we're talking about now, there's no language of the original eight provisions. They're just being added for the first time essentially in 1950 under your theory. No, that's not correct at all, your honor. 1968 is an easier way to understand it. 1968, the voters were asked whether to approve an amendment to add murder and rape. They voted yes. I think 1968 is the right way to look at this, but the very preamble of the amendment itself, part of it said that one of the purposes of the amendment was to remove improper improper language in the prior version of 2 41. So there again, they reenacted a wholly new and substantially and substantively revised version of 2 41 in 1968. I don't think that's possible, your honor. They didn't have the opportunity to reject the original eight crimes. Their vote was of no consequence with respect to the original eight crimes. They were in. I just ask a technical question. The 1950 and let's stick with 1950. The 1950 language. Was it merely a deletion or did it have the entire text of 2 41 in what was being, uh, well, the entire text is published. Voters can read the entire text. What they vote on is for amendment or against amendment. The amendment was the deletion of burglary. Same thing in 1968. Entire entire text published. The vote was for amendment. This is the ballot language for amendment or against amendment. In 1968, the amendment was to add murder and rape. And and I think I do think this is critical distinction. We're not challenging. There was an error. Let's put the language on the secretary of state. Let's say this 2 41 actually wasn't in the Constitution at all. Um, consistent with your void ab initio theory. And all we have is the voters voting on whatever the 1950 language is. Would that have the effect of putting the eight offenses into the Constitution for the first time? No, because they were asked to vote for or against amendment. And there's no indication on anybody's part that they were asked being asked to vote to put those provisions into the Constitution for the first time. They're going to have an issue as a matter of federal constitutional law, which is why that you need a new enactment. And I do think that's why Justice Rehnquist opinion in 100 Underwood. Remember, when it when I talked about the need for a new enactment, what it was saying was we are rejecting the argument that there's been enough passage of time. We are no longer we are no longer enforcing these these disfranchising provisions for racially discriminatory reasons. They're acceptable, neutral reasons for enforcing these provisions. Now, what the court what the court's answer to that was to say, Well, if you want to reenact them and and argue that is reenacted provisions have racially neutral justification, and then you can come back and argue that to us. But you didn't reenact them. And I think what the court is clearly saying is you didn't reenact them. And it is enough that the original 1901 Alabama provision was tainted by invidious discrimination and therefore violates Arlington Heights. Mr. Verrilli, when you come up for rebuttal, I'd like you to answer how your position differs, if at all, from Judge Judge Barkett's solo descent in Johnson. If the if the court would permit me, I can address John. Well, maybe the way over your time, but that's not for me to say. Well, it's hard to get a word in edgewise here. But, Mr. Verrilli, you have exceeded your time. You say time for battle. Mr. Matheny. Thank you. You know, Mr. Apologies. May it please the court. Justin Matheny for the Mississippi Secretary of State. The ultimate question for this court is whether the Mississippi Constitution's felon disenfranchisement provision comports with the Equal Protection Clause. It does. Federal courts universally apply a straightforward, sound and workable standard in this context. When a state materially alters a felon disenfranchisement law through a deliberative legislative process, a challenger cannot simply attack current state law by contending that a prior iteration was still loaded. They instead must prove that discrimination motivated the legislation that produced the current law. Over 20 years ago, this court correctly applied the intervening enactment rule to reject the historical tank theory presented here. On the expanded factual record of this case, the rule applies with even more force and requires the same. Do you agree that when since 1890 have the voters of Mississippi been given a chance to take bigamy, for example, off the 241 list? Well, I think that that goes to the to the plaintiff's crime by crime argument. And what I would submit there is that the voters have never had a chance to go crime by crime because what we have is representative democracy, legislators. And I would point this out because my friend on the other side brought this up. The state has amended Section 241 five times since the original enactment. Of those five, only two of those enactments are actually relevant here and satisfy the intervening enactment because we're not contending that when the disenfranchising frank disenfranchising felonies crime was untouched that those those enactments are relevant. But as to the two that are legislators decided what should be added, what should be kept and what you agree legislators can't change the text of 241. I mean, that's why these measures you're talking about had to go to the people under the Mississippi constitutional amendment process, correct? That's the only way that was then and is today the only way to to change a constitutional provision, right? If only the voters through the amendment process can change the text of the Mississippi Constitution, then how can legislators alone change the purpose of the Mississippi Constitution? Well, I think that the point here is that that that it was it was acting the legislators were proposing what should be added, kept, subtracted and then the enactment, the act of enactment. I don't know if I would say that it's it classifies that the Parliamentarian Act, but the necessary act was for the voters to vote up or down majority vote at a statewide election. That's not that's the point. This is what is troubling to me. They were not given the choice of what to add or subtract because as the voters had said no, then the existing precision provision would still be in effect. They were not the voters were not given the choice up or down on that list. So what you just said is not correct. I think that the choice put before the voters and it was mentioned before and it's true that the entire text of the new provision presented to the voters each time was published in advance and it was on the ballots. But but the key thing here is I think let's keep it simple. In 1968, if the voters had voted no on adding murder and rape, bigamy, theft, arson, perjury would still be disenfranchising today, right? That's true. That's true. And and they might have some ballot holders were that set of crimes off the books. Voters never had a choice of what should be included and excluded. There were no interrogatories presented to voters. Let's let's take let's take opposing counsel that theory on its face. So essentially avoid ab initio. It's not in the 1890 Mississippi Constitution at all. 2 41 doesn't exist. Here's my and they vote for it. Are all the offenses the the 88 offenses now in the Constitution? Yes. I mean, the effect of even though I sort of talk about even though it's not in the 1890 provision at all, because that's void ab initio. It is now because of the 1950 amendments. All eight offenses are now in the Constitution for the first time. I'm every time that it was it was reenacted. You see, yes or no? Yes. Thank you, Mr Matheny. Quick question. Um, assuming for the sake of argument that we agree with Mr Verrilli on the meaning or the legal effect of 2 41 say we declared unconstitutional. What does that necessarily mean? If anything, for statutory disenfranchisement provisions that are not challenged in this lawsuit that incorporate 2 41's list of disqualifying crimes by reference, is there a necessary implication? No. And that was one of the things that I had down in response to this void ab initio theory is that in Mississippi, the Legislature has the power. It has all the legislative power in Mississippi pursuant to Section 33 of the Constitution. It also has power with respect to setting voter qualifications in Section 2 44. I think it's 2 44 to 44 a. But I think that the point here is is that if if the 1890 Constitution was void ab initio and all of these other times that Section 2 41 was enacted through the constitutional amendment process, what you would be left with is the statute. And the statute is is what actually is the implementing statute that was actually results in voters either not being able to register today or to be taken off the rolls by local election. Is it? Is it your view in the state's view that of 2 41 were declared unconstitutional that plaintiff's injuries is, um, still wouldn't be redressed. They would still be disenfranchised under statutory provisions that incorporate 2 41. That's right, Your Honor. And there's actually precedent for this that may be helpful. Um, if you look at Section 2 41 in the 1968 enactment, there was a 1972 enactment that followed it. And, um, in between that time, that's when done versus Blumstein came out and actually, um, for across the country, the one year residency provisions that were applied by states were no good. So what we had here in Mississippi was it? I believe it was in 1972. There was a case Graham versus Waller, which was for three judge court where, um, the out the constitutional provision and had determined that the one year residency requirement was no good because the court took that action in Graham versus Waller as we stay as it stands today. The residency requirement is actually what is prescribed by Section 23 15 11, I believe, and it's a 30 day residency requirement. Instead of the constitutional provision, the judge will its question. There's the 1890 Constitution has a number of of racist provisions, including a prohibition on gun ownership by African Americans in Mississippi. If there were a statute that said, um, you know, we're only gonna, um, allow people to possess guns who are allowed to do so under the Mississippi Constitution of 1890. Um, with that statute hold up, a subsequently enacted statute like that. I think that just making reference to the 1890 Constitution or the making reference to the Section 2 41 as it has been enacted over the years as our statutes do here for voter qualifications. I don't see a problem with that. You know, if there's a statute on guns that incorporated the blatantly racist provision in the 1890 Constitution prohibiting black ownership would would somehow the constitutional provision everyone knows that's unconstitutional, unlawful. Could the statute be enforced that incorporated the plainly discriminatory constitutional provision? Perhaps not in that hypothetical, but as as it would apply here as it would apply here to this case, what we have is we have the actions that were taken in mid 1980s to to ratify and codify Section 2 41 as it exists today after the five enactments that were that were made since the 1890 provision. So I don't see a problem with the fact that it references the prior constitutional provision because what it's referencing is is that Constitution as that provision of the Constitution as it sits on the books today. Let me ask you this is a bizarre list of crimes in Section 2 41. It's, um, as Judge Duncan talked at some length about, um, what's the non racist reason if the world even even if the legislature and not the people through amendment could change the purpose behind 2 41? What's the non racist reason for keeping bigamy, for example, as a disenfranchising crimes as opposed to say, you know, serious sexual crimes against Children or perhaps most relevant voter fraud offenses, which would seem to implicate most strongly the concerns about letting someone vote several parts to that. But let me say first voter fraud is a disenfranchising crime because it's currently included in the statute, but not not until 50 years after this amendment was passed. That does not help you at all. It was in 2012 year old. But as to the list, when you when you look at the list, you essentially have three things you have, and you have all serious crimes, but you have. No, you don't. I'm sorry. I mean, go ahead. Sorry. I'm sorry. All the crimes that are that are on the list are serious crimes is what I meant to say. What I'm saying is, is that you have you have crimes against the person you have crimes against property, and then you have crimes of dishonesty. And I think that the rational but in fairness, you do have a lot of crimes on the books with substantially higher penalties, much longer sentences that for some reason you don't don't disenfranchise. And instead you pick on bigamy, sexual exploitation of a child, kidnapping, human trafficking, manslaughter, aggravated assault, drive by shooting and others. All of those are more serious than bigamy, according to the Mississippi Legislature, and yet not disenfranchised. Most of those are that there is an oddity to this, but it's explainable this way. Most of those crimes that your honor had just read out are things that were codified as felonies after the last time that of the 1968 enactment. I think what what what can be helpful and probative when you're looking at this at this issue here is that in the record, we have reports from the FBI that shows you're saying manslaughter was not an offense before 1968. No, your honor. That's why I said most of the crimes, the drive by shooting the trafficking. And I would say this. I mean, of all the most sexual exploitation of a child was on an offense before 1968. I don't think it was codified the way that it was the way that's codified today. But what I would say, your honor, is that the biggest and largest omission from all of this is obviously drug related offenses. And I would submit that that most of the persons that would be not disenfranchised under state law would be those that would have been committed drug related offenses. But to the point to the point about the 1960s and what is included. If you look in the record at 8 47 to 8 53, you can see the FBI crime reports and what the FBI was reporting as as the major crimes of that time. The most serious offenses on the FBI list, everything except for for burglary and assault on the FBI FBI's list is what was included in the night after the 1968 enactment. That that in part explains the list. Let's talk about 50. What? What? What was the reason behind getting rid of burglary and keeping bigamy? I'm sorry, your honor. What was the reason in 1952 get rid of burglary yet keep bigamy and and obtaining money under false pretenses, etcetera. You know, 1950 was an era in which I existed and bigamy was thought to be very, very, very bad. Well, it was also thought by the Mississippi Supreme Court in 18 in the 1890s to be a crime committed by disproportionately by blacks. May I ask a question of Mr Matheny because I just want one or two. It strikes me as very odd that we're all wrapped around the axle about what happened in 19, uh, 1890. Uh, because two other circuits have not accepted that theory of original sin. Is that correct? The second and the 11th and the only person who advocated the taint can't be purged unless you vote again on every single crime. It's just Judge Barker did in a solo dissent on the 11. That's correct, your honor. And in Judge Barker's dissent, actually, she held Mississippi's amendments out as the most effective because what they did was and the historical record here that we have, it shows what the legislature was up to. They were told by the federal government that section 2 41 was no good because it didn't include serious crimes like murder and rape. And so when you look at what they were actually doing in the legislative journals that we that are in the record in this case, and as was noted before, it's in. It's in the purpose stated in the purpose and the title of what they were doing. What they were up to was responding to the federal government's report that said that the defect that the issue and the problem with the provision was that it didn't include murder and rape. And that's what they did. And that's why the federal government didn't say that the problem was that it was inactive for this for discriminatory purpose. It just said you need to add murder and rape, and that's what they were responding to. No, right. The 1965 Commission on Civil Rights report said that the original version included burglary, theft, arson and false pretenses, but not murder, rape and assault. And that was what was in the report. And that's what the historical record shows. When you look at when you look at the legislative journal, what they were doing in 1968 was they were going in and addressing the problems that had been raised in the Civil Rights Commission's report. They were changing. You believe the 1968 Mississippi legislature was responding to a 1965 report by the Commission on Civil Rights? That's what they had done. That's what they would do. In 1966, they responded by repealing the provisions such as the poll tax and the literary test provisions in response to the commission's report. The next time they got back together in 1968, I think that the only evidence in this record that's specific to the issue of Section 241 and the felon disenfranchisement issue that has a bearing on it shows that the legislature was taking steps to respond to the report. And this is what's not so... I'm asking you is what's the evidence that they were taking steps to respond to a Commission on Civil Rights report? You look at the drafting history. The drafting history is one form of legislative history, and it's actually something that has been recognized that one way you can tell or that illuminates what the legislature was up to. And when you look at the journal, you can see that they went in, they brought Section 241 up, they were changing the residency requirements, they deleted the poll tax from the provision. Mr. Matheny, this is Judge Higginson. Has a fact finder done what you're saying in the first instance yet? A fact finder hasn't done it, but I think that the facts are undisputed. There's no facts on the other side. Well, but that's putting the burden back on the plaintiffs. If the assumption is that the plaintiffs met their Hunter Step 1 burden, Mississippi hasn't yet had the opportunity to do this. North Carolina, the courts have already begun to do it. Alabama, they've begun to do it. People are complying with the Hunter Step 2. It's not that Mississippi doesn't get the opportunity, but they haven't brought their historians forward. I guess I'm just reiterating Judge Graves' question. So my independent question is, under your intervening enactment rule, was the 1968 amendment somehow more fortifying, more qualifying, more intervening than the 1950? Or is the logic of your rule that the 1950 amendment was just as or did lift the taint as much? Are you arguing the two are different and 68 is sort of, we can be more confident about that? Or does your argument stand and fall on both? I think both are important. But the difference is that is there a distinction? I'm asking you is 1950, would you win under it alone? Or not? No, Your Honor, I don't think so. Because what you're looking at is, and the 1968 being the most recent and the last time that they visited the felon disenfranchisement provision is why I believe it's most relevant. But we don't have any records with respect to 1950. And what they, the reasons that the legislature wanted. I agree. I appreciate that. It's the key under Hunter's I read it unanimous Supreme Court Chief Justice Rehnquist saying let's get the opinion and testimony of historians. Seems to me all the other states are doing that certainly the 11th Circuit did in Johnson. And so we're looking at the records and you agree the only records that exist are 1968. You also agree no one no fact finders yet done it because Cotton was a pro se litigant. What's that approach? I'm asking, I'm asking Mr Matheny. Your Honor, with respect to the 1968 amendment, it is true that well, let me back up. I don't think that the burden has shifted to the state to have to prove anything at that point. But what I think that the record does disclose is it discloses facts that are undisputed that are specific as to the felon disenfranchisement issue and what they were up to. And I think that in order to satisfy the intervening enactment rule, all you have to have is two things. These are the limiting principles of the area. You have to have a deliberative legislative process. And the purpose of having a deliberative legislative process is is is what separates our case from Hunter from judicial actions that don't have any effect on what was going on. It also separates us from executive actions of change in the way that the state enforces the law is not something that would be the remedy that would affect the intent behind why it was enacted. So you have the deliberative legislative process prong and then you have the material alteration. And all you're looking for there and all and what that limiting principle does is it ensures that you don't have this silent reenactment problem like the court in Hayden had identified the Second Circuit decision in Hayden had identified. You're not having a silent enactment. You're that there was a meaningful alteration to the provision. That's okay. So in our Let me ask you about that. I'm sorry to interrupt. I'm been in the wings for a while and I keep waiting too long. Um, it seems to me that the argument Mr Verrilli is made as as a lot of common sense merit to it. But what I'm not sure it is fully engaging. And I want you to respond to that. Uh, as everybody acknowledges, this is a two step process. And each time the section of the Constitution that has before it every option, you can eliminate the entire list. It can it can add the new list. And so try to figure out what 100 means when you're looking just at the initial step. And 100 itself was a two step process. So the Supreme Court never got to the ratification issue. But the Constitution was ratified by the people and it stopped at the first step of the legislature committee convention action. So here you have the full range of options in front of legislature every year they meet. And in 1968 they had the option to eliminate as many as they wanted to add as many as they wanted in the list that we have. So I think you have a fairly good argument that that is a reenactment. That's the new list. Uh, if they did not have discriminatory intent in 1968, then it doesn't really matter what the 1890 intent may have been. But it's awful hard to me to rope in the voters and to say what their intent would be. And again, Hunter doesn't worry about the voters. It only worries about that first step of the convention. What do you say to if there is certainly merit on both sides of this argument, but how do we get to applying Hunter to the convention? Well, I think it would be exceedingly difficult. But I would point this out. They don't have the range of options. That's what Mr. Burle is talking about. The legislature had the entire range of options. They could have eliminated the list that kept five. They could have kept six. It could have kept eight. So they had the whole range of options. I think that happened in the legislature, which Mr. Burle is talking about. Uh, and he would have to be given that same range of options. Uh, what is there in Hunter and some other, uh, precedent or common sense that indicate that's not true, that that's not necessary? Well, I don't think that that this court's decision in cotton Hayden or in Johnson could have come out the way that they did if it mattered what choices that the voters had. And it actually in Hayden and Johnson, the choices of the voters were only whether or not to enact a whole constitution or not. They didn't have even even a specific say so specific provision that was issued. And so in those authorities, those applications of Hunter, if you will, to me, say that, um, to me, that answers your question. But I would also say this with respect to determining motives of the voters and what the voters did. I mean, it's part of the reason why there's such a problem with this standard that the other side is attempting to foist here or to put Hunter into. If this case is like any other case, I think it's like Johnson. Let me ask about Johnson and a few of the judges have brought that up there in its Jim Crow Constitution. Florida had a list like Mississippi of enumerated offenses. I have it right here. Bribery, perjury, larceny. After the 1968 Florida amendments, it was no longer an enumerated list. It was just blanket felon disenfranchisement. Um, so how does that compare to Mississippi, which still has the enumerated list in which the voters have never been able to vote up or down on those those remaining enumerated crimes? Well, Your Honor, obviously, we haven't had a chance to vote crime by crime as to what would be included in the list. But I think he could also do it. Florida didn't just say we're gonna blanket disenfranchisement. Get rid of the 1890 list altogether, right? That could have been. They could have done that. And there's something in the record that I speak that I think speaks to that point that that's important, Your Honor. But when we're talking about the 1980s and we're talking about the task force, the election reform task force and what they did, the important records of the election reform task force are at 10 66 10 74 and 10 81 of the record. Obviously, the task force ultimate recommendation was that the law should be left as is at that meaning what was enacted in 1968. But those task force discussions, they looked at the issue of felonies. And the day that D. O. J. Was visiting with the task force in their deliberations, they noted a concern about going to all felonies would simply be too broad, would be too broad. And so you have what what is in what is on our list, what was enacted in 1968. And you have all felonies and you you have recommendation on the task force and recommendation from Malaysia's committees. That was something in between. Mr Matheny, does Mississippi law have any provision for reenactment of law reenactment? Right. You call what happened in 1968 a reenactment. The legislature called it an amendment. Uh, is there any difference under Mississippi law? I mean, does Mississippi law make any provision for reenactment? I don't think that it uses those terms, but I think that the it was that it was reenacted. It was amended with respect to what? What are you telling me? The Mississippi has no provision for reenacting the law. It's just it always calls it an amendment, even if it's a reenact. Is that what you're saying? Your Honor, the only way to amend the Constitution is through what's called the amendment process. But what I'm saying is that the effect of what they did was to amend section 2 41 to add the two crimes that were added in 1968. But the entire it was the entire thing was an enactment. Nothing would have. I'm sorry, Mr Matheny, your brief cited state X realm or V Malthus. And it says, speaking of a constitutional amendment, the obvious reason is that an amendment itself overrules the prior interpretation, which becomes for all practical purposes relegated to history. There is no reason why the same principle should not apply to a provision of the Constitution, such as section 273. In other words, by 90 it later on, it says in 1959, when an earlier 1914 provision of the Constitution was amended, that earlier provision ceased to exist. I I don't know. That's why I asked the Mississippi people to give me some idea about Mississippi law. That's exactly what state versus Malthus held. And the issue there was with section 273 of the Constitution, which actually governs the amendment process. And Justice Robertson in the portion of state versus Malthus that was that was important there was saying that because a new provision of section 2 73 have been enacted in through the constitutional amendment process that the court couldn't go back and do this sort of time traveling, going back in time to imagine how it would decide a prior case under a prior constitutional provision that doesn't exist anymore. But I think that the most the most important point that it's right before you wrap up, may I follow up on Judge Graves's question? I assume nothing would have prevent this is going back to the enact reenactment versus amendment dichotomy that I think Abbott and Hunter contemplate. Nothing would have prevented Mississippi, I assume, from simply putting to the legislature and the voters, the precise language that we're talking about the eight offenses without amendment. I think that that's right, Your Honor, if I'm following your question. Yeah, I mean, I can't imagine why you couldn't do that. Fair enough. Thank you. Your Honor, I see that I'm out of time. Thank you, counsel. Mr Verrilli. Thank you, Your Honor. I'd like to make four points if I could. I want to address the Florida issue that several of the judges have asked me about. I want to talk about the answer that my friend gave with respect to the 1950 amendment. I want to address Judge Willett's point and then speak briefly about the possible non discriminatory justifications for this collection of crimes. With respect to Florida, I think the key point is that it was fundamentally different. There was an enactment in Florida in 1968. One looks at Johnson, and I'm looking now at page 12 20. What the what the en banc court described was this that 100 years after adoption of the 18 68 Constitution, Florida comprehensively revised its constitution. That comprehensive revision included the new felon disfranchisement point, which, as was pointed out earlier, went to a I think an arguably race neutral, certainly facially race neutral and typical for most jurisdictions at the time felon disfranchisement provision. And then what the court says on page 12 22 is that the Legislature approved the proposed new constitution containing the disfranchisement provision was then affirmed by the voters of Florida. The voters of Florida in Johnson had the opportunity to vote up or down on whether to accept the new felon disfranchisement provision. That's what didn't happen here. That's the fundamental difference. That's why the analysis here has to come out the other way from Florida. I just think that's a fundamental point. Now, with respect to the 1950 amendment, I think I heard my friend on the other side say in response to a question from Judge Ho that that if it were true, as it is that the original Section 2 41 crimes were void ab initio because they were they were discriminatorily tainted that the effect in 1950 of asking the voters to subtract one of that list of crimes actually had the effect of enacting for the first time the other eight that can't possibly be right. It just can't possibly be right now with respect to the question. I think I think it depends on the legislative process, and I'm sorry to take up time. But as I understood, I've worked in both the state legislature and in Congress. In Congress, I believe the bills just literally add words and subtract words. And so if that's true here, you would be right. But I believe in California and Texas, at least in California, it's actually what I know best. They just put the entire new bill in front of you and ask you to codify that. That's what that's why I keep asking everybody. Are we in California? Are we in Congress? Which is which is the Mississippi road? The key is that the ballot said vote for amendments. The amendment was eliminate burglary. That's all it says for a minute. Now I'm asking about the language, not not the ballot language that describes it. I'm asking about the legally effective text that's being debated. So what I think unless I guess if I could, I do want to get to my other points. But if I will try to address your your question on if the voters can't vote no, then they can't vote to enact. They have to be able to turn it down or else it's not an enactment. It's there. If it's if they can't turn it down, then it's there. No matter how they vote, can't be an enact. I think that's the answer to the question. Now, with respect to Judge Willis, a question about standing and the statute. I think my friend's answer on the other side can't possibly be correct. For example, I don't think the Legislature of Mississippi could exercise its authority to make kidnapping and disfranchising crime under the under statutory authority to prescribe voter qualifications because the Constitution doesn't make kidnapping and disfranchising crime. And so they'd be exercising statutory authority to amend the Constitution can't possibly be right. So if those eight disfranchising crimes are not in the Constitution, then they can't be implemented separately by statute. The Legislature needs the constitutional authority or else it's just amending the Constitution. And and that that can't be right. And then finally, I point out something that I think is of critical importance here. My friend on the other side was asked repeatedly to provide a non discriminatory explanation for why these eight crimes or disfranchising and other serious crimes involving dishonesty, serious crimes involving moral turpitude, serious crimes involving violence aren't. You heard no answer. No answer. And that, at the end of the day, tells you all you need to know about the right answer in this case. Thank you. Thank you. That will conclude the argue conclude the arguments this morning. This case is under submission.